[No. 1911.]

## W. J. McNeese *v.* The State.

1. Constitutional Law — Grand Jury—Case Approved.— As heretofore held in the case of *Lott* v. *The State*, 18 Texas Ct. App., 627, a constitutional grand jury in this State, since the adoption of the present Constitution, is composed of twelve men, no more and no less; and an indictment presented by thirteen men purporting to be a grand jury is a nullity, and incompetent to confer jurisdiction upon any court. It was further held in Lott's case, and is now re-asserted, that such objection to an indictment is fundamental and jurisdictional, and can be urged in the trial court at any stage of the proceedings, or in this court; or, if it affirmatively appears from the record that the appellant has been convicted of a felony, without being indicted therefor by a legal grand jury, this court will set aside the conviction and dismiss the prosecution, notwithstanding the failure of the appellant to interpose the objection. See the opinion *in extenso* on the subject.

2. Same — Presumptions — Case Stated.— The record entry of the presentment of the indictment recites the fact that it was presented by the grand jury, "thirteen members thereof being present." The assistant attorney-general, on behalf of the State, insists that the word "thirteen" in the entry should be considered and treated as a clerical mistake, and that it should be presumed that the grand jury which returned the indictment was, in fact,

composed of twelve men. But *held*, that the authority of this court to treat verbal or grammatical errors as immaterial, if they do not affect the sense, cannot be extended to cases wherein the error is vital and goes to the foundation of the proceeding.

APPEAL from the District Court of Cooke. Tried below before the Hon. F. E. Piner.

The conviction was for the robbery of G. W. Powell, in Cooke county, Texas, on the 17th day of September, 1884. A term of twelve years and eight months in the penitentiary was the penalty assessed by the jury. The disposition made of the case renders a statement of the facts proved unnecessary.

*W. A. Ledbetter* and *L. H. Harris* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State. There is but one serious question presented by the record in this cause, and that is presented for the first time by a supplemental assignment of error in this court. It is aimed at the legality of the grand jury which found the bill of indictment, and is based upon a recitation or copy of the minutes of the court, which reads as follows: "Tuesday, April 23, A. D. 1885, being the fourth day of the fourth week and the fourth day of the term. Now comes the grand jury, thirteen members thereof being present, and, through their foreman J. S. Jagers, deliver to the judge of this court, in open court, the following named true bill of indictment, to wit:

"THE STATE OF TEXAS
No. 1811.         v.         } Robbery."
       W. J. McNEESE.

No motion was made *in limine* to set aside the indictment because the grand jury was an illegal one; nor because some person not authorized by law was with the same during its deliberations on the indictment found in this cause, as might have been done under the provisions of art. 523 of the Code of Criminal Procedure.

This court will probably apply here the maxim applicable to all legal proceedings not made to appear otherwise, "that whatever ought to have been done will be presumed to have been done," and in the absence of a motion to set aside the indictment, made at the proper time, will presume that the grand jury, as organized, consisted of but twelve men; and that the number as given in the minutes of the court is the result of a clerical mistake of the clerk

of the court; or, at most, that some person other than the grand jury was with them when the bill was delivered to the judge of the court. It is submitted that, if this thirteenth man was with the twelve legal grand jurors when impaneled under the provisions of the Constitution, he could not have been one of their number which consisted of the twelve first called to be impaneled, and would be a person unauthorized to be with the grand jury in their deliberations. This was evidently the view taken by the Legislature when it provided for setting aside an indictment upon motion, not because there were too many men on the grand jury, but because some person unauthorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same. (Code Crim. Proc., art. 523.)

Now, this provision of the Code of Criminal Procedure seems to have been made to meet just such cases as this. And the mode of protecting accused persons in such case was provided in that provision for inquiring into irregularities such as are assigned as error here was therefore made. And there is no other mode by which it can be reached. The district court had jurisdiction of the person of appellant, and of the offense charged, and had the authority to render the judgment found in the record, which judgment must be final unless errors are legally shown to this court sufficient to authorize a reversal. And this court will presume such judgment to be correct unless the error relied on was taken advantage of *in limine*, and by a mode by which it can be presented to this court. (3 Peters, U. S., 193; 93 U. S., 18; 75 Ala., 40.)

Certainly a recital of any fact in the minutes of the court outside the judgment will not be held to vitiate the same, unless the point is saved at the proper time, and in the proper mode, especially when the mode is clearly pointed out by law. Otherwise it would be difficult to get a judgment before this court which would not be jeopardized by clerical mistakes of a clerk.

WILLSON, JUDGE. In the record in this case appears the following entry, to wit: "Thursday, April 23, A. D. 1885, being the fourth day of the fourth week of the term. Now comes the grand jury, thirteen members thereof being present, and through their foreman, J. S. Jagers, deliver to the judge of this court in open court the following named true bill of indictment, to wit: *The State of Texas* v. *W. J. McNeese*, No. 1811. Robbery."—It therefore affirmatively appears from the record before us that the pretended indictment upon which this conviction is founded was presented in court by a body of persons numbering at least *thirteen*.

In *Lott* v. *The State*, 18 Texas Ct. App., 627, it was held by this court that a legal grand jury, under the Constitution of this State, must be composed of *twelve men*, no more and no less, and that a bill of indictment prepared by *thirteen* men, purporting to be a grand jury, was a nullity, and did not confer jurisdiction of the case upon the court in which it was preferred. It was further held in that case that this objection to an indictment was a fundamental one; that it was jurisdictional, and could be urged at any stage of the proceeding in the trial court, or in this court,— or that, if it affirmatively appeared from the record that the defendant had been convicted of a felony, without being indicted therefor by a grand jury, this court would set aside the conviction and dismiss the prosecution, although the defendant had not in any manner made the objection. In that case we stated fully the reasons and the authority upon which we based our judgment. After further reflection upon, and investigation of, the subject, we are more firmly grounded in the correctness of the conclusions arrived at, and announced in the opinion in that case.

It will not be amiss here to recite the history of the legislation in this State concerning the organization of grand juries, and to deduce from this history the object which the convention had in view in incorporating into our present Constitution the provision that a grand jury *shall* be composed of *twelve* men. (Const., art. V, sec. 13.) No similar provision will be found in any of the other previous Constitutions of the State. Up to the time that our present Code of Criminal Procedure became operative, grand juries were organized in accordance with common law practice. At common law a grand jury consisted of not less than twelve nor more than twenty-three men, the concurrence of twelve of whom was required to find a bill. (1 Bish. Cr. Proc., sec. 854; Whart. Cr. Pl. & Pr., § 341.) Article 338 of the original Code of Criminal Procedure fixed the number of the grand jury at not less than fifteen nor more than twenty. Twelve constituted a quorum. (Art. 370.) These provisions existed until our present Constitution was adopted, and were changed, in the Revision of the Code, to accord with the Constitution; that is, were so changed as to make a grand jury consist of *twelve* men, *nine* of whom should constitute a quorum. (Code Crim. Proc., arts. 368, 371, 376 and 390.)

Prior to this constitutional limitation it was a common practice to organize grand juries composed of twenty members. Each of these jurors were entitled to receive from the treasury of the county $1.50 per day for each day they served as jurors. This entailed upon the counties a heavy expense. It was, obviously, to

relieve the tax payers of this expense, as far as possible, that section 13 of article V of the Constitution was provided. It was a measure of economy, the effect of which would necessarily be to lessen the expenses of the grand jury system very greatly, without impairing its efficiency. To effect this object the more certainly, the framers of the section used the emphatic language that a grand jury *shall be composed of twelve men*, thus leaving no room for legislative or judicial discretion as to *number* in the organization of the grand jury. It is a provision having for its purpose, not so much the protection of those accused of crime, as the relief of the tax payers, who had to pay the jurors. In the interest of the accused citizen, it fixes the minimum number at twelve. In the interest of the tax payer, it fixes the maximum number at twelve, instead of twenty, as it was before. Under this provision a body of men numbering either *less* or *more* than twelve is not a grand jury, and the action of such a body cannot confer jurisdiction upon a court.

It is insisted by the assistant attorney-general that we should consider the word *thirteen* in the entry we have quoted as a clerical mistake, and presume that the grand jury which returned the indictment was composed of twelve men. This would, we think, be carrying the rule as to presumptions too far. It is permissible for this court to hold verbal or grammatical errors, which do not affect the sense, to be immaterial, but in a case like this, where the error is a vital one, going to the very foundation of the proceeding, it would certainly be a great stretch of judicial authority to treat it as merely clerical, especially when there is nothing in the context or in any other portion of the record showing it to be such.

It is unnecessary that we should determine other questions presented in this case. Because the defendant has not been tried and convicted upon an indictment of a grand jury, the judgment is reversed and the prosecution is dismissed.

*Reversed and dismissed.*

[Opinion delivered October 17, 1885.]